# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

COURTNEY A. OLSON,                        Case No. 1:13-cv-656
    Plaintiff,                        Dlott, J.
                                          Litkovitz, M.J.

vs.

COMMISSIONER OF                           **REPORT AND**
SOCIAL SECURITY,                          **RECOMMENDATION**
    Defendant.


Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's applications for disability insurance benefits (DIB) and supplemental security income

(SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 12), the

Commissioner's response in opposition (Doc. 17), and plaintiff's reply memorandum (Doc. 18).

## I. Procedural Background

Plaintiff protectively filed applications for DIB and SSI in August 2009, alleging

disability since May 1, 2008, due to bipolar disorder, depression and obsessive compulsive

disorder. These applications were denied initially and upon reconsideration. Plaintiff, through

counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ)

John S. Pope. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing.

On April 19, 2012, the ALJ issued a decision denying plaintiff's DIB and SSI applications.

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ

the final administrative decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.   42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).   The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.   42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.   If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four steps of the sequential evaluation process.   *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2012 (Ex. 4D).
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since May 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: bipolar disorder; post-traumatic stress disorder (PTSD); anxiety; depression; obsessive-compulsive disorder; and history of drug and alcohol abuse (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: unskilled work in a smaller, non-public setting without strict production requirements, relatively static duties, and only minimal social interaction.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

_____

[1] Plaintiff's past relevant work was as a pizza delivery worker, packer, order picker, fast food worker, personal care attendant, cashier, waitress, and produce clerk/stock clerk. (Tr. 56-57, 257-58).

3

7. The [plaintiff] was born [in] . . . 1984 and was 23 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from May 1, 2008, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 13-20).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

---

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 101,300 unskilled, jobs in the regional economy, such as medium exertion cleaner, light exertion hotel cleaner, and sedentary exertion polisher. (Tr. 20, 58).

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ erred in weighing the medical opinions of record; and (2) the ALJ's Step Five finding lacks substantial support in the record because the hypothetical question presented to the VE failed to properly account for all of her supported limitations. (Doc. 12).

1. Whether the ALJ erred in weighing the medical opinion evidence of record.

Plaintiff asserts that the ALJ erred in weighing the medical opinion evidence of record by: (1) rejecting the opinions of her treating psychiatrist, Alice Onady, M.D., and treating psychologist, Joseph McNamara, M.A.; (2) rejecting supported limitations found by the consultative examining psychologist, Nancy Schmidtgoessling, Ph.D.; and (3) giving the most

5

weight to the opinion of the non-examining state agency psychologist, Jennifer Swain, Psy.D.

Plaintiff maintains that the ALJ failed to comply with the Social Security regulations in weighing

the opinions of her treating sources and his decision to reject their opinions lacks substantial

support in the record.    Plaintiff also contends that the ALJ erred in giving reduced weight to Dr.

Schmidtgoessling as her opinion that plaintiff has marked limitations is consistent with the other

opinion and clinical evidence of record.    Lastly, plaintiff contends the ALJ erred by giving the

most weight to Dr. Swain's opinion because it was based on an incomplete review of the record.

For the following reasons, plaintiff's arguments are well-taken.

"The Commissioner has elected to impose certain standards on the treatment of medical

source evidence."    *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).    "These standards, set

forth in administrative regulations, describe (1) the various types of evidence that the

Commissioner will consider, 20 C.F.R. § 404.1512; (2) who can provide evidence to establish an

impairment, 20 C.F.R. § 404.1513; and (3) how that evidence will be evaluated, 20 C.F.R. §

404.1520b.    *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).    This

evidence may include "medical opinions, which 'are statements from physicians and

psychologists . . . that reflect judgments about the nature and severity of [a claimant's]

impairment(s), including [ ] symptoms, diagnosis and prognosis,' physical and mental

restrictions, and what the claimant can still do despite his or her impairments."    *Id*. (citing 20

C.F.R. 404.1527(a)(2)).

The applicable regulations lay out the three types of acceptable medical sources upon

which an ALJ may rely on: treating source, nontreating source, and nonexamining source.    20

C.F.R. §§ 404.1502, 416.902.    When treating sources offer opinions, the Social Security

Administration is to give such opinions the most weight and is procedurally required to "give good reason in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). This requirement only applies to treating sources. *Id*. at 876. "With regard to nontreating, but examining, sources, the agency will simply generally give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined him." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1)) (internal citations omitted).

The following is a summary of the pertinent medical evidence. Plaintiff received mental health treatment at Comprehensive Counseling (CC) from March 3, 2009, to at least December 19, 2011. (Tr. 281-355, 385-473, 526-86, 624-712). At the intake assessment, plaintiff reported that she avoided crowds; she thought strangers talked about her; she felt "she did not deserve to be on this earth"; she thought her family and strangers plotted against her; and she reported having mood swings and periods of sleeplessness. (Tr. 295). On mental status examination, Mr. McNamara, plaintiff's treating psychologist, observed that plaintiff's activity was moderately agitated; she exhibited mild persecutory delusions; her thought content was severely phobic and guilty; and her mood was moderately to severely depressed and severely anxious. (Tr. 312). Mr. McNamara found plaintiff had a mild to moderate impairment with respect to memory and her insight and judgment were poor. He further noted that plaintiff had panic with agoraphobia and that she was unable to talk several times during the session because of sobbing, mainly regarding losing custody of her children. (Tr. 303). Mr. McNamara diagnosed bipolar disorder and heroin dependence. (Tr. 304). He provided a rule out diagnosis

of PTSD, noting plaintiff had no memories prior to the fourth grade, and assessed a current

Global Assessment of Functioning (GAF) score of 41.[3]  (*Id.*).

Plaintiff received counseling from Mr. McNamara at CC through December 19, 2011.

(Tr. 281-355, 385-473, 624-72, 673-712).   Mr. McNamara's progress notes consistently include

his observations than plaintiff presented as depressed (Tr. 315, 317, 319, 325, 329, 331, 528,

625, 631), tearful and occasionally sobbing (Tr. 319, 331, 396, 528, 530, 533, 537, 539, 540,

625, 629, 633, 642), and anxious (Tr. 319, 321, 327, 331, 431, 537, 539, 540, 552, 625, 627, 629,

631, 633, 642).   Plaintiff was occasionally observed as sad and dysphoric (Tr. 638), hopeless

(Tr. 396), stressed (Tr. 315), sullen (Tr. 325), and worried (Tr. 327, 539).   Plaintiff was

infrequently observed as having a brighter affect and smiling.   *See* Tr. 544, 627.

In February 2010, consultative examining psychologist Dr. Schmidtgoessling evaluated

plaintiff for disability purposes.   Dr. Schmidtgoessling found plaintiff presented with adequate

motivation, effort, and persistence.   Her speech was normal and logical and she was able to

sustain conversation.   Dr. Schmidtgoessling noted that plaintiff tended to stare off, but did not

appear depressed.   Plaintiff reported being depressed 60% of the time, yet rated current

depression as a three on a scale of one to ten.   Plaintiff reported weekly episodes of crying and

---

[3]A GAF score represents "the clinician's judgment of the individual's overall level of functioning."
American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev.
2000).   The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social,
and occupational functioning." *Id.*   The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of
severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with
clear expectation of death). *Id.* at 34.   Individuals with scores of 71-80 are classified as having no more than slight
impairment in social, occupational, or school functioning; those with scores of 61-70 are classified as having some
mild symptoms or some difficulty in social, occupational, or school functioning; people with scores of 51-60 are
classified as having "moderate" symptoms or moderate difficulty in functioning; those with scores of 41-50 are
classified as having "serious" symptoms or difficulty functioning; individuals with scores of 31-40 are classified as
having some impairment in reality testing or communication or major impairment in several areas, such as work or
school, family relations, judgment, thinking, or mood; and individuals with scores of 21-30 are classified as having
serious impairment in communication or judgment, including suicidal preoccupation, or an inability to function in
almost all areas. *Id.* at 32.

fluctuating energy.   Plaintiff appeared moderately anxious on exam and her affect was

constricted.   Plaintiff also reported fears of going out and panic attacks when she is around

others, both in and out of the home setting and stated that does not stay in touch with family or

friends.   She reported that she enjoys managing household finances, but also that her spending

had been a problem previously and plaintiff felt she should have a designated payee.   Dr.

Schmidtgoessling noted that plaintiff also endorsed OCD patterns, in terms of counting things

and liking things a certain way.   Plaintiff reported taking medications that are helpful.   Dr.

Schmidtgoessling found plaintiff had concentration problems during the evaluation.   Dr.

Schmidtgoessling stated that plaintiff had limited insight and judgment.   Dr. Schmidtgoessling's

"suggested diagnos[es]" included bipolar disorder NOS; panic disorder with agoraphobia;

obsessive-compulsive disorder; PTSD; social phobia; alcohol abuse, current status unclear;

marijuana abuse, in remission; cocaine abuse, in remission; opioid dependence, in remission; and

sedative abuse, in remission.   Dr. Schmidtgoessling opined that plaintiff was markedly impaired

in her ability to relate to others, including coworkers and supervisors and in her ability to tolerate

the normal stress and pressures of day-to-day work activity.   Dr. Schmidtgoessling determined

plaintiff was not capable of managing funds and should have a payee because of reported

problems with spending and risk of returning to substance abuse.   (Tr. 378-84).

Non-examining state agency reviewing psychologist Dr. Swain reviewed the record in

March 2010, including Dr. Schmidtgoessling's consultative examination report, treatment notes

from Dr. Onady and Mr. McNamara, plaintiff's function reports, and notes from plaintiff's

substance abuse treatment.   Dr. Swain opined that plaintiff has mild restrictions in her activities

of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in

maintaining concentration, persistence, or pace; and no episodes of decompensation of an extended duration.   Dr. Swain found plaintiff would be markedly limited in her ability to interact appropriately with the general public, but was no more than moderately limited in all other mental activities.   (Tr. 488-89).   However, Dr. Swain, did not give any weight to Dr. Schmidtgoessling's opinions of marked impairment in stress tolerance and social interaction because of purportedly inconsistent statements made by plaintiff regarding her social interactions, her history of sobriety, and the lack of evidence establishing that plaintiff had any prior episodes of decompensation.   Dr. Swain concluded that plaintiff would be able to sustain simple repetitive tasks in a setting where there are no strict production demands, the duties are relatively static, and social interaction is minimal; plaintiff would likely perform best in a smaller, non-public setting with familiar others.   (Tr. 474-91).   Vicki Warren, Ph.D., reviewed the file in July 2010 and affirmed Dr. Swain's assessment.   (Tr. 525).

On March 2, 2010, Mr. McNamara completed Mental Status and Daily Activities Questionnaires at the request of the agency.   Mr. McNamara described plaintiff's mood and affect as anxious and depressed; her observed symptoms of anxiety included poor eye contact and restlessness; and he reported that plaintiff avoids threatening and anxiety producing tasks to which she responds with shortness of breath and shakiness.   Mr. McNamara reported the results of some cognitive functioning testing but he did not render an opinion about plaintiff's functionality based on such results.   When asked to provide a medical source statement regarding plaintiff's mental functional abilities, Mr. McNamara did not report his own medical opinion, but quoted plaintiff's subjective reports.   Mr. McNamara reported that poor attendance,

10

poor stress tolerance, and sleeplessness might prevent work activities for a usual work day or work week. (*Id.*). (Tr. 387-91).

On October 19, 2010, Mr. McNamara completed a Mental Impairment Questionnaire (RFC & Listings). Mr. McNamara opined that plaintiff "had no useful ability" to maintain attention for a two-hour segment; complete a normal workday and work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; or deal with normal work stress. Mr. McNamara stated that anxiety, poor concentration, guilt, and defensiveness impaired plaintiff's ability to cope with the challenges of a job and he described her prognosis as "guarded." When asked to describe the clinical findings supporting his opinions, Mr. McNamara cited to plaintiff's depressed mood, constricted affect, moderate to severe anxiety, and ideas of reference. Mr. McNamara checked off a number of plaintiff's presenting symptoms from a checklist, including emotional withdrawal or isolation; generalized persistent anxiety, and recurrent severe panic attacks. Mr. McNamara opined that plaintiff had marked difficulties in maintaining social functioning; moderate to marked difficulties in maintaining concentration, persistence or pace; and mild restrictions of activities of daily living. Mr. McNamara estimated that plaintiff would miss about three days of work per month as a result of her impairments or treatment. (Tr. 588-93).

On November 15, 2011, Mr. McNamara completed a Work Activities Participant Request form at the request of the Butler County Department of Job and Family Services. Mr. McNamara reported that plaintiff was unable to do any work activities due to severe anxiety and depression. He said the stress of the work program combined with the numerous stresses of her

11

life increased the intensity of her symptoms. Mr. McNamara further opined that plaintiff would

be unable to work for six months or longer. (Tr. 685).

Dr. Onady was plaintiff's treating psychiatrist at CC and she managed plaintiff's

medications. Plaintiff began treating with Dr. Onady in August 2009 at which time she reported

that she had been addicted to heroin for 4-5 years and had depression and anxiety since junior

high. (Tr. 290). Dr. Onady noted plaintiff had relapsed on heroin in March 2009. (*Id.*).

Plaintiff also reported having severe mood swings and severe anxiety and spending lots of money

when she was high. (*Id.*). On mental status examination, Dr. Onady stated that plaintiff was

tearful, had fair eye contact, felt overwhelmed, and had poor insight and judgment. (Tr. 293).

Dr. Onady diagnosed Bipolar II depressed, heroin addiction, rule out PTSD, obsessive

compulsive disorder (OCD), and antisocial traits. (*Id.*). Plaintiff was assigned a GAF score of

50. (*Id.*). Dr. Onady prescribed plaintiff the psychotropic medications Celexa, Trileptal,

Risperdal, and Klonopin. (Tr. 388). Due to plaintiff's pregnancy, Trileptal and Klonopin were

discontinued. (Tr. 285). Dr. Onady and Mr. McNamara's notes document that plaintiff was

depressed; had problems getting out of bed many days; experienced sleep disturbance and low

concentration; had passive suicidal ideation; was sad; and experienced mood swings and panic

with agoraphobia. *See* Tr. 284, 638, 643-644, 655. Throughout the course of treatment, Dr.

Onady ascribed to plaintiff GAF scores ranging from 65, to 75-80; Mr. McNamara assigned

plaintiff a GAF score of 41 at intake. (Tr. 532, 535, 543, 579).[4]

---

[4]It is not improper for mental health specialists to "rely on reports and progress notes written by his or her colleagues in treating a patient. . . ." *Holland v. Comm'r of Soc. Sec.*, No. 1:09-cv-240, 2010 WL 3672338, at *12 (S.D. Ohio Mar. 1, 2010) (Report and Recommendation), *adopted*, 2010 WL 3703293 (S.D. Ohio Sept. 16, 2010).

On October 19, 2011, Dr. Onady completed a Mental Impairment Questionnaire (RFC & Listings) wherein she diagnosed plaintiff with bipolar disorder, PTSD, obsessive-compulsive disorder, heroin addiction in remission, and antisocial traits. She assigned plaintiff a GAF score of approximately 40. According to Dr. Onady, plaintiff was unable to meet competitive standards in the following work-related activities: maintain regular attendance or be punctual; sustain an ordinary routine without special supervision; complete a normal workday or work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and deal with normal work stress. Dr. Onady opined that plaintiff's extreme anxiety and agitation compromised her ability to think and work constructively. Dr. Onady further opined that plaintiff is moderately restricted in activities of daily living; has moderate difficulties in maintaining social functioning; and has marked difficulties in maintaining concentration, persistence or pace. (Tr. 618-22).

On November 15, 2011, Dr. Onady completed a Work Activities Participant Request form at the request of the Butler County Department of Job and Family Services. Dr. Onady opined that plaintiff had bipolar disorder which caused severe depression and anxiety and made it impossible to focus and concentrate or use good judgment. Dr. Onady further opined plaintiff was unable to work in any capacity. (Tr. 684).

a. *Plaintiff's Treating Sources, Dr. Onady and Mr. McNamara*

The ALJ gave "no weight" to the opinions of Dr. Onady and Mr. McNamara. The ALJ stated:

> Mr. McNamara's functional capacity assessment paints a picture of utter helplessness, and the record does not support the extreme limits assessed. Dr. Onady offers a somewhat less extreme set of mental limitations, but, as explained elsewhere in this decision, the undersigned [ALJ] has carefully considered the entirety of the medical records and reports of function, and has given greater

13

weight to Dr. Swain.

(Tr. 18).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of

14

examination.   20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.

In addition, the ALJ must consider the medical specialty of the source, how well-supported by

evidence the opinion is, how consistent the opinion is with the record as a whole, and other

factors which tend to support or contradict the opinion.   20 C.F.R. §§ 404.1527(c)(3)-(6),

416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always

give good reasons in [the] notice of determination or decision for the weight [given a] treating

source's opinion.'"   *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)(1)).[5]   *See*

*also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the

treating physician opinion).   Those reasons must be "supported by the evidence in the case

record, and must be sufficiently specific to make clear to any subsequent reviewers the weight

the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Cole*, 661 F.3d at 937 (citing SSR 96-2p, 1996 WL 374188 (1996)).   This procedural

requirement "ensures that the ALJ applies the treating physician rule and permits meaningful

review of the ALJ's application of the rule."   *Gayheart*, 710 F.3d at 544 (quoting *Wilson*, 378

F.3d at 544).   For the following reasons, the Court finds the ALJ erred in weighing the opinion

of plaintiff's treating sources.

First, the ALJ did not employ the appropriate methodology in weighing Dr. Onady and

Mr. McNamara's opinions.   Social Security regulations provide that the ALJ must first

determine whether to give controlling weight to a treating source's opinion by assessing its

---

[5]Title 20 C.F.R. §§ 404.1527, 416.927 were amended effective March 26, 2012.   The provisions governing the weight to be afforded a medical opinion that were previously found at §§ 404.1527(d) and 416.927(d) are now found at §§ 404.1527(c), 416.927(c).

supportability and consistency with other substantial record evidence. *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). After determining whether the opinion is entitled to controlling weight, "the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship" and the other factors enunciated in §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6). *Id.* The ALJ did not follow this framework here. Rather, the ALJ first weighed the opinion of non-examining state agency reviewing psychologist, Dr. Swain, and gave it "great weight" for being "more compatible" with plaintiff's "demonstrated function." He gave "limited weight" to the opinion of consultative examining psychologist Dr. Schmidtgoessling. (Tr. 18). The ALJ then weighed the treating source opinions, but made no finding as to whether Dr. Onady and Mr. McNamara's opinions were entitled to controlling weight as plaintiff's treating psychiatrist and treating psychologist, respectively. Nor did the ALJ apply the regulatory factors to the opinions of Dr. Onady and Mr. McNamara; he merely determined that their conclusions were entitled to "no weight" because the record did not support the limits these sources assessed. (Tr. 18). Notably, the ALJ did not provide citations to the records upon which he based this determination. *Gayheart* makes clear that such an analysis is insufficient. Not only did the ALJ fail to engage in the two-step process of first determining whether Dr. Onady and Mr. McNamara's opinions were entitled to controlling weight, his decision does not reflect that he considered the §§ 404.1527(c) and 416.927(c) factors in affording them "no weight."

Second, the ALJ failed to provide an adequate explanation for discounting the opinions of plaintiff's treating sources. The ALJ stated that Mr. McNamara's opinion "paints a picture of utter helplessness" and that while Dr. Onady's opinion offers a "less extreme set of mental

16

limitations," he had, "as explained elsewhere in [his] decision," given consideration to the entirety of the medical records and function and concluded that Dr. Swain's assessment was deserving of greater weight. (Tr. 18). The ALJ's "explanation" is virtually meaningless. The ALJ fails to specify which of the limitations assigned by Dr. Onady and Mr. McNamara are allegedly inconsistent with "the entirety of the medical records." While the ALJ summarizes portions of the record prior to weighing the treating source opinions, the Court is unable to discern the ALJ's justifications for offering "no weight" to plaintiff's long-time treating psychiatrist and psychologist, but "great weight" to the non-examining state agency doctor. The ALJ has a duty to provide an explicit and reasoned basis for rejecting these treating source opinions. *See Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78) (7th Cir. 1984)) ("It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review."). Here, the ALJ failed to adequately articulate his decision to give "no weight" to the opinions of plaintiff's treating sources and, consequently, his decision lacks substantial support in the record.

Third, the §§ 404.1527(c) and 416.927(c) factors which the ALJ failed to consider or discuss, support giving greater weight to Dr. Onady and Mr. McNamara's opinions. Their conclusions that plaintiff has marked functional limitations in maintaining concentration, persistence or pace and in social functioning due to her mental impairments is well-supported by their clinical observations, including plaintiff's tearful and dysphoric affect, anxious and depressed mood, and limited insight and judgment. It is also supported by the conclusions of Dr. Schmidtgoessling, who found that plaintiff had marked limitations in her ability to relate to

17

others.   The remaining regulatory factors also support giving greater weight to Dr. Onady and

Mr. McNamara's opinions as: (1) they were plaintiff's treating psychiatrist and psychologist for

over two years and frequently evaluated her; (2) their opinions are supported by clinical

observations, detailed explanations, and psychiatric treatment notes; (3) their findings are

consistent with the opinion of Dr. Schmidtgoessling; and (4) they are rendering opinions in their

shared area of specialization, *i.e.*, psychiatry.   *See* 20 C.F.R. §§ 404.1527(c)(2)-(5),

416.927(c)(2)-(5).   The ALJ erred by failing to consider these factors in weighing Dr. Onady and

Mr. McNamara's opinions.

     For these reasons, the Court finds the ALJ's decision to give "no weight" to Dr. Onady

and Mr. McNamara's opinions is not supported by substantial evidence and does not comply

with controlling Sixth Circuit authority.   20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6);

*Gayheart,* 710 F.3d at 376.   Consequently, this matter should be remanded with instructions to

the ALJ to re-evaluate these treating source opinions.

     b. *Dr. Schmidtgoessling, the consultative examining psychologist*

     The ALJ gave "limited weight" to the conclusions made by consultative examiner Dr.

Schmidtgoessling regarding plaintiff's functional capacity.   The ALJ explained that while he

agrees with the doctor's findings that plaintiff "would have mild impairment in receiving and

executing instructions, and moderate difficulty with concentration, persistence, or pace, [he]

disagrees with the doctor's conclusions on interacting with others (marked impairment) and

workplace stresses and pressures (marked impairments)."   (Tr. 18).   The only explanation

provided for this conclusion is the ALJ's conclusion that plaintiff's "demonstrated function, as

explained elsewhere in [his] decision, are (sic) more compatible with moderate limitation in

those areas." (*Id*.). The ALJ erred in giving reduced weight to Dr. Schmidtgoessling's findings.

As with the treating source medical opinions, the ALJ's decision fails to provide an adequate explanation for rejecting the marked limitations found by Dr. Schmidtgoessling. The ALJ fails to specify which record evidence is allegedly inconsistent with Dr. Schmidtgoessling's conclusion that plaintiff has marked impairments in interacting with others and in handling workplace stresses and pressures. Without some citation to the evidence relied on by the ALJ or an explanation as to how this evidence supports the rejection of these portions of Dr. Schmidtgoessling's opinion, the Court cannot meaningfully review the ALJ's decision on this point. *See Hurst*, 753 F.2d at 519. Moreover, the ALJ's decision includes no analysis of the factors under 20 C.F.R. §§ 404.1527(c) and 416.927(c) in weighing Dr. Schmidtgoessling's opinion, such as whether her conclusions are supported by the psychological testing results or are consistent with the record as a whole. The ALJ therefore failed to comply with Social Security regulations in weighing this opinion evidence. *See Dillman v. Comm'r of Soc. Sec.*, 990 F. Supp.2d 787, 800 (S.D. Ohio 2013) (remanding matter where ALJ failed to employ 20 C.F.R. § 404.1527(c) criteria in weighing opinion of consultative examiner). The undersigned therefore recommends that this matter be remanded with instructions to the ALJ to reweigh Dr. Schmidtgoessling's opinion as required by the Social Security regulations.

c. *Dr. Swain, the state agency reviewing psychologist*

The ALJ gave "great weight" to Dr. Swain's opinion based on her consideration of "the entirety of medical records and reports of function. . . ." (Tr. 18). The ALJ's decision to give the most weight to the opinion of Dr. Swain, the non-examining state agency reviewing

psychologist, is not supported by substantial evidence. As the Sixth Circuit explained in *Gayheart*: "To be sure, a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of [reviewing] doctors than to those of treating physicians." *Gayheart*, 710 F.3d at 376 (citing Soc. Sec. Rul. No. 96-6p, 1996 WL 374180, at *3). "In appropriate circumstances, opinions from State agency . . . psychological consultants and other program . . . psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency . . . psychological consultant or other program . . . psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency . . . psychological consultant's opinion *is based on a review of a complete case record* that includes a medical report from a specialist in the individual's particular impairment *which provides more detailed and comprehensive information than what was available to the individual's treating source.*" *Id.* (emphasis added). Here, however, the ALJ adopted the opinion of Dr. Swain with virtually no analysis and based on her review of an incomplete record. Dr. Swain issued her assessment in March 2010 without review of plaintiff's treating sources' opinions and many of the mental health treatment records. *See* Tr. 527-42 (CC treatment notes from April 2010 to December 2010); Tr. 588-93 (Mr. McNamara's October 2010 opinion); Tr. 618-23 (Dr. Onady's opinion); Tr. 625-71 (CC treatment notes from January 2011 to April 2011); Tr. 674-712 (CC treatment notes from June 2011 to December 2011). Dr. Swain's opinion references CC treatment notes from August to October 2009 (Tr. 490); it therefore appears her opinion was based on a review of only a fraction of the evidence of record.

One of the factors the ALJ is to consider in weighing medical opinions is "the extent to which an acceptable medical source is familiar with the other information in [the] case record."

20 C.F.R. §§ 404.1527 (c)(6), 416.927(c)(6).   A state agency reviewing doctor's opinion may be entitled to greater weight than that of a treating or examining doctor in certain circumstances, such as when the "State agency medical ... consultant's opinion is based on a review of a complete case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source."   *Blakley*, 581 F.3d at 409 (quoting SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996)).   In *Blakley*, however, the ALJ's decision was reversed where the non-examining sources had not reviewed "much of the over 300 pages of medical treatment . . . by Blakely's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Blakley*, 581 F.3d at 409 (internal quotation omitted).   Therefore, under *Blakley*, the ALJ may credit the opinion of a state agency reviewing doctor who has failed to review a complete record if he articulates the reasons for doing so and such reasons are supported by substantial evidence.

Here, the ALJ did not acknowledge the limited nature of Dr. Swain's review in affording her opinion "great weight."   Rather, the ALJ simply concluded that Dr. Swain's opinion was deserving of more weight than the other medical opinions of record given his consideration of the record as a whole.   (Tr. 18).   Again, the ALJ did not cite to the specific evidence considered or explain how it supported his decision to give the most weight to a non-examining source whose opinion was based on a review of only a portion of the record evidence.   In consideration of the ALJ's failure to provide a reasoned explanation supported by citations to the record, the ALJ's decision to give "great weight" to Dr. Swain's opinion is not supported by substantial evidence. This matter must therefore be reversed and remanded with instructions to reweigh Dr. Swain's conclusions consistent with this opinion and the requirements of *Blakely* given the limited nature

21

of her review.

Accordingly, plaintiff's first assignment of error should be sustained.

2. Whether the ALJ presented an improper hypothetical to the VE.

For her second assignment of error, plaintiff asserts that the ALJ erred by relying upon flawed vocational testimony because the hypothetical question presented to the VE did not properly characterize her functional abilities. As discussed above, the ALJ's bases for discounting the opinions of Dr. Onady, Mr. McNamara, and Dr. Schmidtgoessling, and for giving "great weight" to Dr. Swain's conclusions, lack substantial support in the record. As the ALJ's RFC formulation was essentially an adoption of Dr. Swain's conclusions, the hypothetical question presented to the VE, based on this RFC formulation, does not properly reflect plaintiff's limitations. Accordingly, the ALJ erred by relying on this vocational testimony to carry his burden at Step Five of the sequential evaluation process. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's impairments). Because the ALJ's hypothetical questions failed to accurately portray plaintiff's limitations, the VE's testimony in response thereto does not constitute substantial evidence that plaintiff could perform the work identified by the VE.

Accordingly, plaintiff's second assignment of error should be sustained and this matter should be reversed and remanded with instructions to the ALJ to provide a hypothetical question to the VE that accurate portrays plaintiff's mental impairments as determined by the ALJ after re-weighing the opinion evidence and formulating a consistent RFC.

**IV. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of her alleged onset date. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings, including a determination of the weight to be accorded to the opinions of Dr. Onady, Mr. McNamara, Dr. Schmidtgoessling, and Dr. Swain; for reconsideration of plaintiff's RFC; and for further medical and vocational development as warranted.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: _10/27/14_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

COURTNEY A. OLSON,      Case No. 1:13-cv-656
   Plaintiff,        Dlott, J.
             Litkovitz, M.J.

   vs.

COMMISSIONER OF
SOCIAL SECURITY,
   Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

   Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report

objected to and shall be accompanied by a memorandum of law in support of the objections. If

the Report and Recommendation is based in whole or in part upon matters occurring on the

record at an oral hearing, the objecting party shall promptly arrange for the transcription of the

record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems

sufficient, unless the assigned District Judge otherwise directs. A party may respond to another

party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make

objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,*

474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

24